IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT L. CLARK,                }
                                }
    Plaintiff,                  }
                                }   CIVIL ACTION NO.
v.                              }
                                }   00-AR-1451-S
BELLSOUTH MOBILITY, Inc.,       }
                                }
    Defendant.                  }
                                }

ENTERED
JUN 2 1 2001

### MEMORANDUM OPINION

Before the court is defendant's motion for summary judgment. Plaintiff, Robert L. Clark ("Clark"), alleges that defendant, BellSouth Mobility, Inc. ("BellSouth"), discriminated against him on the basis of his race by failing to promote him to the position of RF Systems Specialist.[1] Clark brings this action pursuant to the Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. Also before the court is defendant's motion to strike the affidavit of Elbert "Bo" Seveir Jamison III ("Jamison"). For the reasons set forth in the opinion below, defendant's motions are due to be granted.

### PERTINENT AND UNDISPUTED FACTS

On January 6, 1997, BellSouth hired Clark as a full-time employee. Clark is white. As an Inventory Administrator, Clark

---

[1] On July 13, 2000, the court dismissed Clark's claim of retaliation, and on March 26, 2001, pursuant to a joint stipulation of dismissal, the court dismissed Clark's claim of wrongful termination.



was responsible for, among other things, controlling the spare equipment inventory in one of BellSouth's warehouses. Clark's supervisors were Donna Dawson ("Dawson") and Danny Thomas ("Danny"). Neither Dawson nor Danny was involved in the RF Systems Specialist hiring decision at issue in October 1999.

In August 1999, the RF Systems Specialist position became available when a white male left the position. The RF Systems Specialist position is an entry-level position in the RF Engineering department.

On September 7, 1999, the Human Resources Department informed Randy Thomas ("Thomas") that he could begin interviewing applicants. Thomas assigned Ed Fowler ("Fowler"), a white male, as the Hiring Manager for the position. Fowler was assisted in the hiring process by J.D. Harris. ("Harris"), a white male. Fowler and Harris each interviewed the eight applicants for the RF Systems Specialist position separately.

Fowler and Harris selected Kariba Bush ("Bush"), a black male, for the RF Systems Specialist position, with the approval of Thomas. Fowler and Harris ranked Clark as their third choice for the position (Clark was actually tied for third with another candidate).

Clark did not complain to anyone at BellSouth that he was discriminated against due to his race when he did not receive the

2

promotion. (Affidavit of Fowler ¶ 16; Affidavit of Harris ¶ 19; Affidavit of Thomas ¶ 6). Clark also stated that he had never heard Fowler, Harris or Thomas make discriminatory comments about white people. Clark Depo., at 169-70. He stated that he had no reason to believe that Fowler, Harris or Thomas believed a white person could not do the job. Clark Depo., at 170. Clark also stated during his deposition that he did not believe he was discriminated against when he did not receive the promotion:

> Q: You never said anything to Randy [Thomas], Ed [Fowler], J.D. [Harris] or Donna [Dawson] about the fact that Mr. Bush was black?
>
> A: No. I said he wasn't nearly as qualified as me. I did bring that up several times.
>
> Q: Okay

                    *****

> A: I just felt that I was the most qualified and that he—his qualifications weren't nearly as good as mine . . .

                    *****

> Q: But y'all never discussed your race or his race at all?
>
> A: No. I just felt that wouldn't have been an appropriate thing over there in the office, although I could have, but I didn't.

3

>Q: Did you ever tell anybody that you thought the reason you didn't get the job was because you were white?
>
>A: Yes, I did.
>
>Q: Who did you tell that to?
>
>A: Rick Carter, David Kavakas, Marty Black, Jimmy Holley.

Clark Depo., at 145-48.

In his initial Rule 26 disclosures, Clark offered the names of co-workers, Jimmy Holley ("Holley"), Rick Carter ("Carter") and David Kovakas ("Kovakas"), as individuals with firsthand information about the alleged discriminatory hiring process. During his deposition, however, Clark could not offer any additional information to support his allegations:

>Q: Now, do you have any additional information other than what you provided in the Rule 26 disclosures as to the reasons why you were not selected for that position?
>
>A: No.
>
> *****
>
>Q: Okay . . . Your response just lists some names. So, what I'm asking for, is there anything other than just those people that we talked about that supply the facts upon which you base your claim?
>
>A: That's all I know of
>
> *****

4

>    Q:   And we talked about Mr. Kovakas, Mr.
>         Holley [sic], Mr. Carter. Those are the
>         three individuals that you mentioned said
>         something to you about the fact that they
>         wanted to put a black person in the job;
>         is that right?
>
>    A:   Yes, yes.
>
>    Q:   Is there anyone else that said anything
>         like that to you?
>
>    A:   No, sir, not that I know of. Not to me.
>
>    Q:   Are there any other individuals that you
>         believe have discoverable information
>         about the fact that you believe a black
>         person was selected for the job because
>         he was black?
>
>    A:   Not that I know of.

Clark Depo., at 152-54. Subsequent to Clark's deposition, Holley, Carter and Kovakas offered declarations in which they each stated that (1) they did not have any personal knowledge that Clark was not selected for the position because he is white; (2) they were not involved in the decision to select Bush for the position; (3) they have never heard anyone other than Clark say that Bush was selected because he is black; and (4) they have no personal knowledge that Bush was selected because he is black. (Declaration of Kovakas ¶¶ 4-5; Declaration of Holly ¶¶ 4-5; Declaration of Carter ¶¶ 4-5).

On February 3, 2000, Clark filed a charge of race discrimination with the Equal Employment Opportunity Commission

5

("EEOC"). On March 14, 2001, the EEOC issued him a right to sue letter. On May 30, 2000, Clark filed his complaint in this action.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On a defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a jury could return a verdict for plaintiff. If so, defendant's motion for summary judgment must be denied. If, however, there is

no legitimate basis upon which a jury could return a verdict for plaintiff, defendant's motion must be granted.

## DISCUSSION

Clark contends that he was qualified for the RF Systems Specialist position because he had worked for BellSouth and was familiar with its system, and he had experience working for companies in the same industry. Clark also asserts that his education qualifies him for the position. Clark has college degrees in accounting and biology, and he believes that these degrees demonstrate his intellectual capacity. Clark also contends that he is qualified for the job because his employee reviews were "outstanding" and he "had been [working for BellSouth] for four years, and . . . pretty much knew everybody and what was going on." Clark Depo., at 120. BellSouth concedes that Clark was "qualified."

According to BellSouth, Fowler and Harris selected Bush because they believed he was the most qualified candidate. In his memorandum to Don Sykes, Human Resources Manager, Fowler provided the following rationale for hiring Bush rather than Clark: "[Bush] performed well in all of the dimensions identified for the position, scoring a 3 or better for each dimension. The consensus is that considering the background and work experience, this candidate would be able to immediately contribute to the

7

department. His current skills and work experience demonstrate his technical and learning ability. I feel these qualities would enhance his performance in this position and provide long term benefits to BellSouth."

As for his comments on Clark, who was tied for third in the ranking of candidates, Fowler wrote: "This candidate scored well in the interview with scores of 3 or higher in all but one category. The experience and knowledge of the system equipment was a plus for the candidate. There were no notable disadvantages for this person except that he had stronger competition from the selected candidate."

To establish a *prima facie* case for failure to promote, plaintiff bears an initial burden of showing: (1) he belongs to a protected group; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees outside the protected group were promoted. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). Once a plaintiff establishes all the elements of his or her *prima facie* case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). If the employer offers legitimate reasons for the employment action, the plaintiff must demonstrate

8

that the employer's proffered explanation is a pretext for discrimination. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell-Douglas*").

Clark can establish a *prima facie* case of race discrimination in any one of three ways: (1) by direct evidence of discriminatory intent; (2) by statistical proof of a pattern of discrimination; and (3) by circumstantial evidence via the test set forth in *McDonnell Douglas*. Clark must present evidence in the form of specific facts showing that the defendant's hiring decision is a pretext for discrimination. "Mere conclusory allegations and assertions will not suffice." *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Clark has not met this burden.

The parties do not dispute that Clark is white, that he was not promoted, and that he was "qualified" for the job. The parties do disagree, however, as to whether Clark has offered any evidence that equally or less qualified employees outside the protected group were promoted. Clark has not produced or pointed to any specific facts which cast doubt on the truth of BellSouth's legitimate, nondiscriminatory reasons for hiring Bush rather than Clark.

Clark's brief in opposition to BellSouth's motion for summary judgment offers no evidence—direct, statistical or

9

circumstantial—to rebut BellSouth's proffered legitimate, nondiscriminatory reasons for selecting Bush for the RF Systems Specialist position. Bush had a Bachelor of Science degree in electronics engineering technology from DeVry Institute. Clark's education had been in accounting and biology, and he had no formal training in electronics engineering. Bush worked at a company in Birmingham, Alabama on a project that required him to work closely with BellSouth Telecommunications. According to BellSouth, Bush's duties at that company involved designing systems that were very similar to the programs that would be necessary in the RF Systems Specialist position. Clark had no similar experience. According to BellSouth, Bush had experience programming software and designing and building communication circuits, whereas Clark did not have any similar experience. Clark could only offer the following to demonstrate that Bush was not qualified for the position:

> Q: How do you know that Mr. Bush was not qualified for the job?
>
> A: I just think, from what I've heard around the office, that he couldn't have been...
>
> Q: Other than what you were told by someone else, do you have any personal knowledge that Mr. Bush wasn't qualified for this job?
>
> A: No.

Clark Depo., at 164-66. Clark fails to offer any evidence about Bush's qualifications based on either his own personal knowledge, and any other admissible evidence.

While Clark is not convinced by BellSouth's stated reasons for preferring Bush, this court cannot second-guess what appears to be legitimate business judgments. The truth of the matter is that "one's own subjective appraisal of one's accomplishments alone clearly do not establish that an individual is more 'qualified' for a given position than someone else." *Huchsermeyer v. AT&T Communications*, 746 F.Supp. 99, 103 (N.D. Ga. 1990), *aff'd*, 929 F.2d 706 (11th Cir. 1991).

Clark suggests evidence of race discrimination merely because BellSouth hired Bush rather than to promote him. The court fails to see how this fact alone is evidence of pretext, and how discriminatory intent can be fairly deduced from the fact, assuming it to be a fact, that BellSouth employed its ability to make the subjective judgment that employers have to make from time to time. Under the law, Fowler and Harris are permitted to make hiring decisions of persons within the scope of their hiring authority. All that they may not do, for purposes of this dispute, is to fail to promote Clark on account of his race. In any event, Clark has failed to provide evidence that Fowler and Harris's articulated nondiscriminatory reasons for not promoting him are pretext. The

11

court's "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Alexander v. Fulton County*, 207 F.3d 1303, 1340 (11th Cir. 2000)(citing *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1329-30 (10th Cir. 1999)).

Clark attempts to support his arguments by citing case law that has limited, if any, precedential value in the Eleventh Circuit. Clark fails to direct the court's attention to *Alexander v. Fulton County*, which addresses the evidence necessary to establish pretext in a promotion discrimination case:

> In a failure to promote case . . . a plaintiff cannot prove pretext by simply arguing or even by showing that [he] was better qualified than the [party] who received the position [he] coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were motivated by race. We have explained, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer."

207 F.3d 1303, 1339 (11th Cir. 2000)(quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).

The *Alexander* court further explained that, "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as

12

virtually to jump off the page and slap you in the face." *Id.* at 1340 (citing *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999)). Clark points out that he received positive evaluations and believed he was qualified for the position because he "pretty much knew everybody and what was going on." Clark Depo., at 120. While BellSouth does not dispute his basic qualifications, under the law, Fowler and Harris are permitted to make assessments of the ability of a person under consideration for a promotion, and they may legally refuse to promote him unless a racial motivation is proven. Even if Fowler and Harris exercised bad or questionable judgment in making their hiring decision, a conclusion this court may not make and does not suggest, BellSouth's failure to promote Clark does not support a claim unless it was made on account of his race. For this reason, Clark's claim ultimately fails as a matter of law.

The court will also grant BellSouth's motion to strike the affidavit of Jamison. Because it has not been signed by Jamison, verified under penalty of perjury, or notarized, the purported affidavit does not constitute admissible evidence. Even if it were admissible, the purported affidavit fails to make the existence of any fact of consequence to the determination of this action more or less probable than it would be without the evidence. Fed.R.Evid. 401.

13

## Conclusion

A separate and appropriate order in conformity with the foregoing opinion will be entered.

DONE this 21st day of June, 2001

*/s/ William M. Acker*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE